UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT KRAUSE, et al.,

        Plaintiffs,

  v.

OHIO OPERATING ENGINEERS-PENSION
FUND BOARD OF TRUSTEES, et al.,

        Defendants.

Case No. C2-10-667
JUDGE GREGORY L. FROST
Magistrate Judge Mark Abel

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings as to Counts 3, 4, 5, 6 and 7 (ECF No. 11), Plaintiffs' Memorandum Opposing Defendants' Motion for Judgment on the Pleadings (ECF No. 18), Defendants' Reply in Support of its Motion for Judgment on the Pleadings (ECF No. 19), Plaintiffs' Motion for Leave to File First Amended Complaint (ECF No. 15), and Defendants' Opposition to Plaintiffs' Motion for Leave to Amend the Complaint (ECF No. 20). For the reasons that follow, the Court **DENIES in part and DENIES as moot in part** Defendants' Motion for Judgment on the Pleadings as to Counts 3, 4, 5, 6 and 7 and **GRANTS** Plaintiffs' Motion for Leave to File First Amended Complaint.

### I. Background

The following facts are taken from Plaintiffs' proposed amended complaint. (ECF No. 15-2.)

On February 1, 2007, Plaintiff Robert Krause retired from his job as a heavy equipment operator for Piping of Ohio Inc., located in Middletown, Ohio. Krause was a member of the Ohio Operating Engineers while he was employed at Piping of Ohio, Inc. and he participated in

1

the Ohio Operating Engineers Health and Wellness Plan ("Health Plan") and the Ohio Operating Engineers Pension Fund ("Pension Fund"). Both the Health Plan and the Pension Fund are employee welfare benefits plans that are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

In mid-January 2007, the Ohio Operating Engineers provided to Krause an "Early Retirement Calculation" form that showed Krause was eligible for "normal/unreduced early" retirement pension payments of $909.01 per month. (ECF No 15-2, Ex. A.) The Early Retirement Calculation form also indicated that the "estimated cost for medical coverage is $584.25 if you retire as of February 1, 2007" but that Krause's "medical cost would increase" if he retired after February 1, 2007. *Id.* The medical coverage was a family plan that also covered Krause's wife, Plaintiff Donna Krause.

Before deciding to retire, Krause telephoned the Ohio Operating Engineers and spoke with a representative to confirm the accuracy of the Early Retirement Calculation form. A handwritten note on Krause's copy of the Early Retirement Calculation form states that "if you wish to retire as of Feb. 1, 2007, we must receive your completed application in this office no later than Jan. 31, 2007." (ECF No. 15-2 at ¶¶ 17, 18, Ex A.)

On January 22, 2007, Krause submitted an application for retirement benefits to the Ohio Operating Engineers. On January 25, 2007, Krause received a letter from the Ohio Operating Engineers that stated "our records indicate that you will be eligible for medical coverage under the Health and Welfare Plan." *Id.*, Ex. C. Plaintiff then submitted his application for retirement. Plaintiff's retirement became effective on February 1, 2007.

Sometime after Krause retired, the Ohio Operating Engineers determined that Krause and

his wife were not eligible for health benefits under the Health Plan.  On May 8, 2007, Krause telephoned the Ohio Operating Engineers and was advised that "a mistake was made & that he did not meet the requirements for [health insurance] Coverage."  *Id.*, Ex. D (Ohio Operating Engineer representative's handwritten note memorializing telephone conversation).

On June 11, 2007, Krause sent a letter to the Ohio Operating Engineers requesting that his medical coverage be reinstated.  Plaintiff also appealed the decision to deny his health care coverage.

In an attempt to obtain other health care coverage, Krause accepted employment with Watson Gravel.  On October 30, 2008, the Pension Plan Administrator, Raymond Orrand, sent Krause a letter indicating that his appeal of the denial of health plan benefits was denied and that his pension benefits were suspended during the term of his employment with Watson Gravel.  Krause left his position at Watson Gravel so that his pension benefits would be reinstated.  The Ohio Operating Engineers did not reinstate his pension benefits.

On July 27, 2010, Plaintiffs filed this action alleging eight claims for relief.  Plaintiffs named as Defendants the Ohio Operating Engineers Health and Welfare Plan Board of Trustees, which is the plan sponsor of Health Plan, the Ohio Operating Engineers Pension Fund Board of Trustees, which is the plan sponsor of the Pension Fund, and Raymond Orrand, who is the Administrator of both the Health Plan and the Pension Fund.

On January 15, 2011, Defendants filed their motion for judgment on the pleadings, requesting dismissal of Counts 3, 4, 5, 6, and 7.  (ECF No. 11.)  That motion is ripe for review.

On February 1, 2011, Plaintiffs filed their motion for leave to file an amended complaint.  (ECF No. 15.)  That motion too is ripe for review.

## II. Plaintiffs' Motion to Amend the Complaint

### A. Standard

Federal Rule of Civil Procedure 15 provides that a "court should freely give [leave to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of a request to amend a complaint is left to the broad discretion of the district court. *General Electric Co. v. Sargeant & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). The United States Supreme Court has held that motions for leave to amend pleadings should be liberally granted unless the motions are brought in bad faith or the proposed amendments would cause undue delay, be futile, or unfairly prejudice the opposing parties. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *see also Moore v. City of Paducah*, 790 F.2d 557, 561 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639-40 (6th Cir. 1982)).

### B. Analysis

Plaintiffs move to amend the complaint to withdraw Counts 1, 3, 4, 5, and 7 and to remove Raymond Orrand as a defendant. The proposed amended complaint retains Count 2 (referring to it as Count 1), Count 6 (referring to it as Court 2), and Count 8 (referring to it as Count 3). Defendant does not oppose the amendment with regard to all claims except Count 6, equitable estoppel. With regard to that claim, Defendants argue that the Court should deny Plaintiffs' request because the amendment would be futile. Defendants contend that the "conclusory statements [offered by Plaintiffs in the proposed amended complaint] are not sufficient to state a *prima facie* claim of estoppel under the recently-tightened federal pleading standards." (ECF No. 20 at 2.) Defendants' argument is not well taken.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (clarifying the plausibility standard articulated in *Twombly*). To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "The court must 'accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiff [].' " *Louisville/Jefferson County Metro Gov't v. Hotels.com*, L.P., 590 F.3d 381, 384 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)) (alterations in original).

> With regard to Plaintiffs' equitable estoppel claim, the Sixth Circuit directs:
>
> Under our precedent, the elements of an equitable estoppel claim are: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation. *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991) and *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987)).

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010). "In addition, the '[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions.' "

5

*Solomon v. Medical Mut. of Ohio*, 1911 FED App. 0005N, 2011 U.S. App. LEXIS 213, at *13-14 (6th Cir. Jan. 4, 2011) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 521 (6th Cir. 2010)) (alterations in original).

Plaintiffs do not dispute that the Health Plan language at issue is unambiguous. Instead, Plaintiffs rely upon the exception set forth in *Bloemker*:

> We hold that a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

605 F.3d at 444.

Plaintiffs here have alleged a valid claim for equitable estoppel according to these elements. Plaintiffs allege that: (1) Krause received an Early Retirement Calculation form that stated the cost for medical coverage per month for the rest of his life if he retired by a certain date, which constitutes a representation of material fact; (2) that Defendants were aware of the true facts; (3) that Defendants' written Early Retirement Calculation representation, second letter expressing that Plaintiffs' were eligible according to Defendants' records for health insurance, and Defendants' telephone conversation with Krause are sufficient conduct to give Krause a right to believe that Defendants intended him to act upon their erroneous representations when deciding to take early retirement; (4) that Plaintiffs were unaware of the true facts related to the health care benefits; and (5) that Krause detrimentally and justifiably relied upon the representations. Moreover, Defendants actions of twice putting in writing and once verbally affirming Plaintiffs' eligibility for the health insurance benefits sufficiently alleges intended

deception or gross negligence as to amount to constructive fraud.

With regard to the additional three allegations required by *Bloemker* to state a plausible claim for equitable estoppel when an ERISA governed plan is unambiguous, Plaintiffs met the first requirement by attaching to the complaint the required writings, (*i.e.*, the Early Retirement Calculation form and the letter affirming health care eligibility), which meets the first requirement.  As to Krause's ability to calculate his own benefit, the second required allegation, the Court makes a reasonable inference that the Health Plan provision was complicated enough that it did not allow for individual calculation as can be seen by the fact that Defendants miscalculated the benefit.  If the benefits calculation department of the Health Plan sponsor and/or Administrator was unable to correctly determine Plaintiffs' health care benefits and Plaintiffs' cost to continue to receive those benefits, not once but on several occasions, it is certainly reasonable to infer that Plaintiffs are alleging that the provision was complicated enough to prevent Krause from making the determination.  Further, the provision at issue on its face refers to information that may not be available to a plan member, such as the specific amount of hours Krause's employer contributed to the Health Plan.

Finally, the third requirement Plaintiffs are required to plead is extraordinary circumstances, which Plaintiffs have done.  Indeed, the balance of equities strongly favors the application of estoppel here to prevent Plaintiffs from being left with no health insurance for the remainder of their lives and an exceedingly diminished ability to obtain health insurance.  *See* Stephen R. Miller *et al.*, Postretirement Medical Benefits Plans: An Analysis of Funding and Termination Issues, 12 J. Pension Plan & Compliance 193, 193-94 (1986) (retiree health insurance tends to be extremely expensive based on a variety of factors such as the rising cost of

medical care and the increased poor health of retirees).

Defendants argue that the Sixth Circuit's "2011 decision in *Solomon* highlights the limited nature of the extraordinary circumstances necessary for *Bloemker* to apply." (ECF No. 19 at 3) (citing *Solomon v. Medical Mut. of Ohio*, 1911 FED App. 0005N, 2011 U.S. App. LEXIS 213, at *13-14 (6th Cir. Jan. 4, 2011)).  Defendants explain that the plaintiff in *Solomon* entered a residential treatment facility that her health plan documents, sponsored by Medical Mutual of Ohio ("MMO"), clearly stated were not covered by her insurance.  Notwithstanding the plan's clear language, the plaintiff claimed that a misrepresentation on the residential treatment facility's website, which indicated that her insurance covered treatment there, permitted her to maintain an estoppel claim.  The appellate court rejected application of estoppel, Defendants contend, "because the terms of the plaintiff's plan documents stated that residential treatment facilities were not covered, regardless of the website's misrepresentation."  (ECF No. 19 at 3.)  Therefore, Defendants conclude that in *Solomon*, "unlike in *Bloemker*, the plan documents contained all the information necessary for the plaintiff to determine that the services she sought were not covered.  Thus, the court determined that *Bloemker* did not apply." *Id.*

Defendants, however, fail to recognize that the Sixth Circuit did not simply deny the estoppel claim because the plan documents were clear, regardless of a material representation made by the *plan*.  Instead, the *Solomon* court explained that:

> Solomon's case lacks such intended deception or constructive fraud by MMO.  The inaccurate information appeared on the website of third-party First Health, not on MMO's; Solomon does not allege that MMO knew of First Health's error; and she fails to present facts or cite legal authority that either supports a finding that MMO owed a duty to ensure the accuracy of First Health's website or that otherwise justifies holding MMO responsible for First Health's mistake.  The district court thus

> did not err in rejecting Solomon's estoppel argument and affirming MMO's benefits determination.

*Solomon*, 2011 U.S. App. LEXIS 213, at *14-15.

In the case *sub judice*, unlike in *Solomon*, the material misrepresentation was not made by a third party that may not have owed a duty to ensure the accuracy of the information transmitted to the insured. Instead, the misrepresentations were made by the Health Plan itself. Plaintiffs are not seeking to hold the Health Plan responsible for the mistake of a third party. Plaintiffs here seek to hold the Health Plan responsible for their own multiple misrepresentations that have allegedly resulted in serious harm to Plaintiffs. Thus, Defendants' argument that this case does not present the extraordinary circumstances necessary for *Bloemker* to apply is not well taken.

Based on the foregoing, the Court concludes that Plaintiffs have stated a plausible claim for equitable estoppel. While the Court recognizes the pleading standard the United States Supreme Court set forth in *Twombly* and *Iqbal*, the Sixth Circuit has explained the interplay between that standard and the standard set forth in Rule 8 of the Federal Rules of Civil Procedure:

> Weeks later [after *Twombly* issued], the Supreme Court cited *Twombly* in support of the well-established principle that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 127 S. Ct. at 1964). "We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008).

*Gunasekera*, 551 F.3d at 466.

9

Accordingly, the Court determines that amendment to the complaint would not be futile, and thus, **GRANTS** Plaintiffs' motion to amend the complaint.

### III. Defendants' Motion for Judgment on the Pleadings

**A. Standard**

Defendant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Court reviews motions made under Rule 12(c) in the same manner it would review a motion made under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Accordingly, to survive Defendants' motions for judgment on the pleadings, Plaintiff's complaint must state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. 544; *Iqbal*, 129 S.Ct. 1937.

**B. Analysis**

Based on Plaintiffs' unopposed withdrawal of several claims in their motion to amend the complaint, the only claim left at issue in Defendants' motion for judgment on the pleadings is Count 6, Plaintiffs' equitable estoppel claim. As the Court determined *supra*, however, that claim can survive a motion to dismiss for failure to state a claim upon which relief may be granted. Therefore, the Court **DENIES** Defendants' motion for judgment on the pleadings as it relates to Plaintiffs' equitable estoppel claim and **DENIES** as moot the remainder of Defendants' motion.

### IV. Conclusion

Based on the foregoing, the Court **DENIES** Defendants' Defendants' Motion for Judgment on the Pleadings as to Counts 3, 4, 5, 6 and 7 as it relates to Count 6 and **DENIES** as moot the remainder of Defendants' motion (ECF No. 11) and **GRANTS** Plaintiffs' Motion for

Leave to File First Amended Complaint (ECF No. 15).  The Clerk is **DIRECTED** to file ECF No. 15-2 as Plaintiffs' First Amended Complaint.

    **IT IS SO ORDERED.**

                                     **/s/ Gregory L. Frost**
                                     **GREGORY L. FROST**
                                     **UNITED STATES DISTRICT JUDGE**